UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

QUINTIN J. BALLENTINE,

Plaintiff,

-against-

STATE OF NEW YORK; LETITIA JAMES, in her official capacity as Attorney General of the State of New York; KATHY HOCHUL, in her official capacity as Governor of the State of New York,

Defendants.

26-CV-6444 (GBD)

ORDER OF DISMISSAL

GEORGE B. DANIELS, United States District Judge:

Plaintiff, who is appearing *pro se*, brings this action under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("RA"), and state law. Named as Defendants are the State of New York, New York Attorney General Letitia James, and New York Governor Kathy Hochul. Plaintiff sues James and Hochul in their official capacities. Plaintiff filed the original complaint in this action on July 25, 2026. By order dated September 8, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. On September 18, 2026, without direction from the Court, Plaintiff filed an amended complaint. (ECF 6.) For the reasons set forth below, the Court dismisses the amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true, but it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Id.* at 678-79. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 678.

## BACKGROUND

The following allegations are drawn from the amended complaint.[1] Plaintiff is a "mixed-race LGBTQ+ man with Bipolar I Disorder who has been intermittently homeless for the past ten

[1] The Court quotes from the amended complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

years." (ECF 6, at 1.) During his time in the New York City shelter system, "Plaintiff has personally witnessed and experienced systemic abuse, neglect, and exploitation." (*Id.* at 2.) On or about April 15, 2025, the New York City Department of Homeless Services ("DHS") placed Plaintiff at the Blondell Avenue Men's Shelter, a shelter operated by non-profit organization Cares for the Homeless ("CFTH") in the Bronx. Upon his arrival to the shelter, Plaintiff provided shelter staff with "his DHS-approved accommodation letter for Bipolar I Disorder." (*Id.*)

Despite the accommodation letter, CFTH staff subjected Plaintiff to "anti-LGBTQ+ slurs and disability-based mockery." (*Id.*) CFTH staff also "incited other residents against" Plaintiff, "failed to intervene during a violent assault," and "excluded" Plaintiff from the shelter in cold weather by "confin[ing] [him] to the lobby for over seventeen hours without access to restrooms, food, water, or his prescribed medication." (*Id.* at 2-3.)

On an unspecified date, shortly after Plaintiff informed CFTH shelter staff that he intended to file complaints against them, a CFTH supervisor "made a false 'violent/psychotic' emergency call" to emergency medical services ("EMS") about Plaintiff, leading Plaintiff to be "involuntarily transported to Jacobi Hospital." (*Id.* at 3.)

Plaintiff alleges that Defendants James and Hochul "had actual and constructive notice of the systemic abuses occurring at CFTH-operated shelters through DHS audits and resident complaints," but they "failed to investigate, sanction non-compliant providers, or implement reforms to protect individuals with disabilities in the shelter system." (*Id.*)

Plaintiff seeks damages and declaratory and injunctive relief.

## DISMISSAL OF NEW YORK STATE, THE ATTORNEY GENERAL, AND THE GOVERNOR

Plaintiff has previously brought an action against the City of New York and CFTH arising from the events described in the amended complaint, and asserting claims under Section

1983, the ADA, the RA, and state law. *See Ballentine v. Care for the Homeless*, No. 25-CV-3819 (GHW) (S.D.N.Y.). By order dated September 17, 2026, Judge Gregory Woods granted the City's motion to dismiss and granted in part and denied in part CFTH's motion to dismiss. ECF 1:25-CV-3819, 68 (S.D.N.Y. Sept. 17, 2026). That action is ongoing. Plaintiff does not name the City of New York or CFTH as defendants in this action, and the court will not construe the amended complaint as asserting claims against those defendants as such claims are currently pending in another action. The Court therefore limits this action, as Plaintiff has styled it, to claims against the State of New York, Letitia James, and Kathy Hochul.

### A. Claims under Section 1983

Plaintiff sues the State of New York and New York Attorney General James and New York Governor Hochul in their official capacities. For the reasons set forth below, the Court dismisses Plaintiff's Section 1983 claims against the State of New York and against the individual defendants in both their official and individual capacities.

#### 1. Eleventh Amendment immunity

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity[.]" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States, their agencies, and their instrumentalities from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "To the extent that a state official is sued . . . in h[er] official capacity, such a suit is deemed to be a

suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). Thus, the Eleventh Amendment also precludes claims against individual state officials, in their official capacities, for damages, retrospective injunctive relief, and retrospective declaratory relief. *See Green*, 474 U.S. at 72-74; *Halderman*, 465 U.S. at 101-02; *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022).

Congress has not abrogated the states' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977). Accordingly, the Eleventh Amendment bars Plaintiff's Section 1983 claims against the State of New York, Attorney General James, and Governor Hochul for damages, retrospective injunctive relief, and retrospective declaratory relief. Those claims must be dismissed for lack of subject matter jurisdiction.[2] Fed. R. Civ. P. 12(h)(3); *Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."). The damages claims must also be dismissed under the IFP

[2] Under the exception to Eleventh Amendment immunity articulated in *Ex parte Young*, 209 U.S. 123 (1908), "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (citations omitted). Furthermore, the *Ex parte Young* exception applies only "where the official sued has 'some connection with the enforcement of the [allegedly unconstitutional act.]'" *Nassau & Suffolk Cnty. Taxi Owners Assoc., Inc. v. State*, 336 F. Supp. 3d 50, 68 (E.D.N.Y. 2018) (quoting *Ex parte Young*, 209 U.S. at 157)). To the extent Plaintiff is seeking prospective injunctive relief against Attorney General James and Governor Hochul in their official capacities, the Court dismisses those claims because, as discussed below, Plaintiff does not allege any facts suggesting an ongoing violation of his federal constitutional rights, or that those individuals have any connection to the events described in the complaint.

statute, which requires dismissal of any claim that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(iii).

### 2. Individual-capacity claims

Although Plaintiff asserts only official-capacity claims against the named government officials, in light of his *pro se* status, the Court will liberally construe the complaint as also asserting claims under Section 1983 against these defendants in their individual capacities. To state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held liable under Section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official[.]" *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff's only allegation against the Attorney General and Governor is that they had "actual and constructive notice of the systemic abuses occurring at CFTH-operated shelters through DHS audits and resident complaints," but they nevertheless "failed to investigate" or take action. (ECF 6, at 3.) Nowhere in the complaint, however, does Plaintiff allege any facts suggesting that the Governor or Attorney General, was personally aware of these issues. Nor does Plaintiff explain why two high-ranking New York State officials would be involved in

personal oversight of facilities operated by a non-profit organization and a New York City agency.

Furthermore, even if Plaintiff could allege facts suggesting that the Attorney General and Governor were personally involved in failing to protect him from harm, he nevertheless fails to state a constitutional violation. Plaintiff appears to assert that they failed to investigate complaints about CFTH-operated housing or to protect him from harm by these housing providers. There is, however, no federal constitutional duty requiring a government official to investigate or protect an individual from harm. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196-97 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual. . . . If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them."); *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)); *see also Baltas v. Jones*, No. 21-CV-0469, 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) (The plaintiff "has no 'constitutional right to an investigation of any kind by government officials.'" (citation omitted)); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an adequate investigation. . . . Accordingly, a failure to investigate is not

independently cognizable as a stand-alone claim under Section 1983." (internal quotation marks and citation omitted)).

There are two recognized exceptions to this general rule: (1) "when [a government official] takes a person into [the government official's] custody and holds him there against his will, the Constitution imposes upon [the government official] a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; and (2) when a government official affirmatively creates or increases a danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In both of these contexts, the plaintiff must also show that the government official's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (citation omitted). This last "requirement screens out all but the most significant constitutional violations, 'lest the Constitution be demoted to . . . a font of tort law.'" *Id.* (citation omitted).

Here, Plaintiff alleges that he resided in a homeless shelter; he does not allege that he was in state custody. *See Brown v. City of New York*, 786 F. App'x 289, 293 (2d Cir. 2019) (holding that involuntary custody exception did not apply in case brought against the City of New York and City employees where plaintiff alleges she was assigned to a homeless shelter and could not leave between 10:00 p.m. and 6:00 a.m.); *Oslzly v. Rosenblatt*, No. 14-CV-3638 (SLT) (LB), 2014 WL 4161347, at *7-8 (E.D.N.Y. Aug. 19, 2014) (holding that the custody exception to the rule does not apply to "homeless people who voluntarily choose to remain in shelters operated by government entities or contractors"). Plaintiff also alleges no facts suggesting that those government officials committed any affirmative acts to increase or create a danger to Plaintiff. Accordingly, neither of the two exceptions to the general rule applies in this case. The Court therefore dismisses any Section 1983 claims Plaintiff may be asserting against Attorney General

James and Governor Hochul in their individual capacities for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. Claims under the ADA and RA**

Plaintiff asserts claims against the State of New York for disability discrimination and retaliation under Title II of the ADA. The Court construes the complaint as also asserting claims under the RA.

**1. Discrimination claims**

Title II of the ADA prohibits discrimination by public entities.[3] *See Reid v. Zackenbaum*, No. 05-CV-1569, 2005 WL 1993394, at *4 (E.D.N.Y. Aug. 17, 2005). The RA prohibits discrimination in "any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

The substantive standard for Title II of the ADA and the RA is similar. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. The RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a discrimination claim under either of these statutes,

> a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or

[3] Title II defines a "public entity" as including, among other things, "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

> activities, or was otherwise discriminated against by the defendant because of his disability.

*McElwee v. Cnty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004)).

Under the ADA and Rehabilitation Act, a "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C) (ADA); 29 U.S.C. § 705(20)(B) (RA incorporating by reference the ADA's definition).

Here, even if the Court assumes that Plaintiff has a disability as defined by the ADA and RA, and that the State of New York is subject to those statutes, Plaintiff still fails to state a claim for discrimination. He alleges no facts suggesting that the State of New York, or anyone employed by the State of New York, denied him the opportunity to participate in or benefit from a service, program, or activity of the State of New York, or that the State or any of its employees otherwise discriminated against him based on a disability. As discussed above, Plaintiff's allegations describe events that occurred in private and City-run facilities. He does not allege any facts showing how the State of New York was involved in the events giving rise to his claims or how it discriminated against him based on a disability. The Court therefore dismisses Plaintiff's discrimination claims against the State of New York under the ADA and RA for failure to state a claim on which relief may be granted.[4] *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[4] The Court notes that because Plaintiff has not alleged any facts suggesting that the State of New York violated his rights under the ADA, he also does not allege facts demonstrating that Title II of the ADA is a valid abrogation of the State's Eleventh Amendment immunity in this action. *See T.W. v. New York State Bd. of L. Examiners*, 110 F.4th 71, 82 (2d Cir. 2024) ("[T]o determine whether a Title II abrogation [of Eleventh Amendment immunity] is valid, courts proceed . . . 'on a claim-by-claim basis,' considering '(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth

### 2. Retaliation claims

To state a claim of retaliation under either the ADA or the RA, a plaintiff must show: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."[5] *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (internal quotation marks and citation omitted). Such a causal connection may be shown either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Id.* (internal quotation marks and citation omitted). But, to show a causal connection, "a plaintiff must show that 'but for' the protected activity, the adverse action would not have been taken." *Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 170 (2d Cir. 2024).

The Court dismisses Plaintiff's retaliation claims under the ADA and RA for the same reason it dismissed his discrimination claims under those statutes. Even if the Court assumes that Plaintiff engaged in protected activity, he alleges no facts suggesting that the State of New York, or any of its officers or employees, knew that Plaintiff engaged in such activity, took adverse

---

Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.'" (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)).

[5] As with a claim of discrimination brought under the RA, a plaintiff asserting a claim of retaliation under that statute must also show that the defendant receives federal funding. *Daly v. Westchester Cnty. Bd. of Legislators*, No. 19-CV-4642 (PMH), 2023 WL 4896801, at *4, 7-8 (S.D.N.Y. Aug. 1, 2023), *aff'd*, No. 23-1220-CV, 2024 WL 3264125 (2d Cir. July 2, 2024) (summary order).

action against him, or that there was any causal connection between the protected activity and adverse action. The Court therefore dismisses Plaintiff's retaliation claims under the ADA and RA against the State of New York for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. Claims under state law**

A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction of any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**D. Leave to amend is denied**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because nothing in the amended complaint suggests that the defects in Plaintiff's pleadings could be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses the amended complaint for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3), and for failure to state a claim on which relief may be granted and seeking damages against a defendant immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), (iii).

The Court declines to exercise supplemental jurisdiction of Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See* *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment dismissing this action.

The Clerk of Court is directed to mail a copy of this order to the named plaintiff.

SO ORDERED.

Dated: NOV 1 2 2026
New York, New York

George B. Daniels
GEORGE B. DANIELS
United States District Judge